UNITED STATES BANKRUPTCY COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X
In re

EUROSPARK INDUSTRIES, INC.

                                    Debtor.
----------------------------------------------------------X

Chapter 11

Case No. 98-21459-CEC

<u>DECISION</u>

APPEARANCES:

Valerie Millman, Esq.
William Curtin, Esq.
Office of the United States Trustee
271 Cadman Plaza East, Suite 4529
Brooklyn, New York 11201

Charles E. Simpson, Esq.
Windels Marx Lane & Mittendorf, LLP
156 West 56th Street
New York, New York 10019
Counsel to Debtor

Robery Kolodney, Esq.
Kane Kessler, P.C.
1350 Avenue of the Americas
New York, New York 10019
Counsel to Debtor

Michael E. Gorelick, Esq.
Abrams, Gorelick, Friedman & Jacobsen, P.C.
One Battery Park Plaza, 4th Floor
New York, New York 10004
Counsel to Lloyd's and Massachusetts Bay Insurance

Joshua L. Mallin, Esq.
Weg & Myers, P.C.
52 Duane Street
New York, New York 10007
Special Counsel to Debtor

Daniel C. Marotta, Esq.
Richard Gabor, Esq.
Gabor & Marotta, LLC
277 Broadway, Suite 1300
New York, New York 10007
Proposed Counsel to Debtor

Gail Zweig, Esq.
Levi Lubarsky & Feigenbaum, LLP
1185 Avenue of the Americas, 17th Floor
New York, New York 10036
Counsel to Fleet Precious Metals, Inc., by its
successor in interest, Bank of America

Raymond J. Dowd, Esq.
Dunnington, Bartholow & Miller, LLP
1359 Broadway, Suite 600
New York, New York 10018
Counsel to Michael Spiegel

CARLA E. CRAIG
Chief United States Bankruptcy Judge

1

This matter comes before the Court on the motion of the United States Trustee (the "UST") for the appointment of a chapter 11 trustee in this case pursuant to 11 U.S.C. § 1104(a)(2) and (a)(3).[1] Eurospark Industries, Inc. ("Eurospark" or the "Debtor") and its sole shareholder, Michael Spiegel, object to the appointment of a chapter 11 trustee. The UST's motion is supported by the estate's largest secured creditor, Fleet Precious Metals, Inc., ("Fleet");[2] the Debtor's former attorneys, Windels Marx Lane & Mittendorf, LLP; the Debtor's current bankruptcy counsel, Kane Kessler, P.C.; and the Debtor's current special counsel, Weg & Myers, P.C. ("Weg & Myers").[3] For the following reasons, the appointment of a trustee is warranted pursuant to § 1104(a)(2).

## Jurisdiction

This Court has jurisdiction of this core proceeding pursuant to 28 U.S.C. §§ 157(b)(2)(A) and 1334, and the Eastern District of New York standing order of reference dated August 28, 1986. This decision constitutes the Court's findings of fact and conclusion of law to the extent required by Federal Rule of Bankruptcy Procedure 7052.

## Background

The following facts are undisputed.

1.    The Bankruptcy Filing

On August 14, 1998, Eurospark filed a voluntary petition under chapter 11 of the Bankruptcy Code. The Debtor was in the business of fabricating fine gold into jewelry.

---

[1] Unless otherwise specified, all statutory references herein are to the Bankruptcy Code, 11 U.S.C.

[2] Fleet appears by its successor in interest, Bank of America.

[3] On March 5, 2009, the Debtor filed applications to substitute Kane Kessler and Weg & Myers with Gabor & Marotta, LLC. (Docket entry nos. 192, 194). These applications are still pending.

(Proposed Disclosure Statement at 13, docket entry # 110.)  Prior to filing, on March 14, 1998, the Debtor's gold, valued by the Debtor in excess of $4 million, was allegedly stolen during an armed robbery.  (Proposed Disclosure Statement at 18, docket entry #110.)

During the first year of the bankruptcy case, the Debtor, with court approval, sold all of its machinery, equipment, inventory and real property.  On July 7, 1999, the Debtor filed a proposed plan of liquidation and disclosure statement, to which Fleet objected.  Thereafter, on September 23, 1999, the Court approved a stipulation between the Debtor and Fleet resolving Fleet's objections, and pursuant to which the parties agreed to submit a consensual plan of liquidation and disclosure statement.  However, more than a decade later, no other plan or disclosure statement, consensual or otherwise, has ever been filed.

2.    The Adversary Proceedings

In September 1998, the Debtor commenced two adversary proceedings (the "Adversary Proceedings") against Massachusetts Bay Insurance Company ("Massachusetts Bay"), the Underwriters at Lloyd's, and Lloyd Thompson Limited Art Incorporated N.V. (together, "Lloyd's," and with Massachusetts Bay, the "Insurance Companies").  The Adversary Proceedings sought to recover proceeds of two insurance policies based upon the Debtor's allegation that the Debtor lost gold valued in excess of $4 million and business income in excess of $1.5 million as a result of the armed robbery.  The maximum coverage under the insurance policies is $6.5 million.[4]  Among other affirmative defenses, the Insurance Companies asserted

---

[4] The Debtor contends that, if a favorable verdict is rendered in the Adversary Proceedings, the estate could recover, with interest, approximately $8 million.

3

that Mr. Spiegel staged the alleged robbery, that the policies are void, and that the policies do not

cover the alleged losses.

On July 20, 1999, the Debtor filed motions in the Adversary Proceedings to withdraw the

reference to the District Court.  On December 2, 1999, the District Court denied the motion

without prejudice to renewal after completion of discovery.  Subsequently, on January 13, 2005,

after discovery was completed, the District Court issued an order withdrawing the reference.

On May 5, 2005, Mr. Spiegel, acting on his own behalf, filed a motion to intervene in the

Adversary Proceedings.  In support of the motion, Mr. Spiegel asserted that his individual

interests are not aligned with those of the Debtor.  Mr. Spiegel stated:

> The interest of the debtor corporation, Eurospark Industries, Inc. is to
> recover an award in bankruptcy in order to pay the claims of
> Eurospark's various creditors and its legal counsel.  Spiegel's
> interests, however, are to recover Spiegel's individual money, time
> and labor lost as a result of [the Insurance Companies'] wrongful
> actions.  Clearly the interests of the corporation and of the individual
> are divergent.  Spiegel's interest cannot be represented by that of the
> [D]ebtor, as his interests conflict with those of the [D]ebtor.

(UST Ex. 1 at 5; Reply Mem. of Law at 5, No. 1:05-cv-00208-ENV-JMA, docket entry #13.)

On June 9, 2005, the District Court granted Mr. Spiegel's motion to intervene in the

Adversary Proceedings.

On September 28, 2005, and on December 30, 2005, Massachusetts Bay and Lloyd's filed

motions for summary judgment.  The Debtor and Mr. Spiegel opposed the motions.

On February 1, 2008, Magistrate Judge Joan M. Azrack issued a Report and

Recommendation denying Massachusetts Bay's motion, but granting Lloyd's motion to the

extent it related to the Debtor's claim for indemnification for the labor component of the gold.

4

Thereafter, on July 2, 2008, The Honorable Eric Vitaliano issued a Memorandum and Order adopting the Report and Recommendation without modification.

After the District Court ruled on the summary judgment motions, the Debtor, by special counsel Weg & Myers, engaged in mediation with the Insurance Companies.  As a result of the mediation, a proposed settlement resolving the Adversary Proceedings was reached, under which the Insurance Companies would pay $2,225,000, from which Fleet would receive $2 million in satisfaction of its secured claim, and the Debtor's administrative creditors would share $225,000. Currently, Eurospark's debt consists of $2.7 million secured debt owed to Fleet, approximately $1 million of administrative claims,[5] approximately $250,000 of unsecured claims, and a $1.2 million subordinated claim held by Mr. Spiegel.  (Tr.[6] 6/4/09 at 9-11, 21; Tr. 8/12/09 at 28; Proposed Disclosure Statement at 33, docket entry #110.)  The unsecured creditors will receive no distribution under the terms of the proposed settlement, nor will Mr. Spiegel.  Fleet and the administrative claimants support the proposed settlement, and Mr. Spiegel objects to it.

The Debtor, by Mr. Spiegel, and acting through proposed substitute counsel Gabor & Marotta, LLC, argues that no settlement was reached because Mr. Spiegel, the principal of the Debtor and its sole officer, did not consent to it.  Mr. Spiegel believes that this settlement is inadequate, and that the claim against the Insurance Companies should be litigated to a final determination.

[5] This figure does not include a $500,000 contingency fee for Weg & Myers, which will be paid by Fleet pursuant to a stipulation dated April 23, 2001.

[6] "Tr." refers to the transcript of the hearing held on the date specified.

To resolve this impasse, the UST seeks the appointment of a chapter 11 trustee for the estate pursuant to § 1104(a) of the Bankruptcy Code. Given that the only remaining assets of the estate are the claims against the Insurance Companies, the trustee's principal role would be to evaluate the proposed settlement and to determine whether to seek approval of it, or to administer these assets in some other way, such as by proceeding with litigation or pursuing further settlement discussions.

<u>Legal Standard</u>

As applicable to this case, § 1104(a) of the Bankruptcy Code provides:[7]

> At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee -
>
> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>
> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. §1104(a).

The Bankruptcy Code generally permits chapter 11 debtors to remain in control of their assets and business operations. <u>In re Adelphia Commc'ns. Corp.</u>, 336 B.R. 610, 655 (Bankr.

---

[7] Section 1104(a)(3) was added to the Bankruptcy Code by the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005. Because this case was filed in 1998, the 2005 amendments do not apply. <u>In re Adelphia Commc'ns. Corp.</u>, 336 B.R. 610, 655 n.97 (Bankr. S.D.N.Y. 2006). Accordingly, the UST's motion must be denied to the extent it seeks to appoint a chapter 11 trustee pursuant to § 1104(a)(3).

S.D.N.Y. 2006).  A debtor-in-possession owes fiduciary duties to the bankruptcy estate.  Smart

World Techs., LLC v. Juno Online Servs., Inc. (In re Smart World Techs., LLC), 423 F.3d 166,

175 (2d Cir. 2005) (stating that a debtor-in-possession's "duty to wisely manage the estate's legal

claims is implicit in the debtor's role as the estate's only fiduciary"); In re Bowman, 181 B.R.

836, 843 (Bankr. D. Md. 1995).  These obligations "include a duty of care to protect the assets, a

duty of loyalty and a duty of impartiality."  Bowman, 181 B.R. at 843 (citing Daniel B. Bogart,

Liability of Directors of Chapter 11 Debtors in Possession: "Don't Look Back-Something May

Be Gaining on You", 68 Am. Bankr. L.J. 155, 216-27 (1994)).  To fulfill its duty of loyalty, a

debtor-in-possession must "avoid self-dealing, conflicts of interest and the appearance of

impropriety."  Id.

 "When a debtor-in-possession is incapable of performing [its statutory] duties, a Chapter

11 trustee may be appointed."  In re Ionosphere Clubs, Inc., 113 B.R. 164, 169 (Bankr. S.D.N.Y.

1990).  Nonetheless, the "'appointment of a trustee should be the exception, rather than the

rule,'" Adelphia, 336 B.R. at 655 (quoting In re Sharon Steel Corp., 871 F.2d 1217, 1225 (3d Cir.

1989)), and is an extraordinary remedy, In re Ridgemour Meyer Props., LLC, 413 B.R. 101, 108

(Bankr. S.D.N.Y. 2008); In re Euro-Am. Lodging Corp., 365 B.R. 421, 426 (Bankr. S.D.N.Y.

2007); Adelphia, 336 B.R. at 655.  The movant must prove, by clear and convincing evidence,

that the appointment of a chapter 11 trustee is warranted.  Ridgemour Meyer, 413 B.R. at 108;

Euro-Am. Lodging, 365 B.R. at 426; Adelphia, 336 B.R. at 655.

 It is not necessary to find fault on the part of the debtor before appointing a chapter 11

trustee in "the interests of creditors, any equity security holders, and other interests of the estate"

pursuant to § 1104(a)(2).  Sharon Steel, 871 F.2d at 1226; Euro-Am. Lodging, 365 B.R. at 428;

In re 1031 Tax Group, LLC, 374 B.R. 78, 90 (Bankr. S.D.N.Y. 2007).  When deciding whether

relief under § 1104(a)(2) is warranted, a court will consider:

> (i) the trustworthiness of the debtor;
>
> (ii) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation;
>
> (iii) the confidence-or lack thereof-of the business community and of creditors in present management; and
>
> (iv) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment.

Ionosphere, 113 B.R. at 168 (citations omitted).  Notwithstanding the articulation of these

factors, the standard under § 1104(a)(2) is flexible.  Ridgemour Meyer, 413 B.R. at 112; Euro

Am. Lodging, 365 B.R. at 427; Adelphia, 336 B.R. at 658, Ionosphere, 113 B.R. at 168.

Ultimately, the court should consider the "practical realities and necessities" of the case.

Ionosphere, 113 B.R. at 168 (quoting In re Hotel Assocs., Inc., 3 B.R. 343, 345 (Bankr. E.D. Pa.

1980)).

## Discussion

The UST argues that the appointment of a trustee pursuant to § 1104(a)(2) is appropriate,

because in the present posture of the case, where there are no ongoing business operations, no

assets other than the insurance claims, and no reorganization in prospect, Mr. Spiegel's interest

in obtaining a recovery for himself individually constitutes a conflict of interest that prevents him

from exercising the debtor's fiduciary duty to administer the claims against the Insurance

Companies for the benefit of creditors of the estate.  The UST points out that Mr. Spiegel

admitted – indeed, asserted – in his motion to intervene in the Adversary Proceedings, that his

interests with regard to the claims against the Insurance Companies "conflict with those of the Debtor." (UST Ex. 1 at 5; Reply Mem. of Law at 8, No. 1:05-cv-00208-ENV-JMA, docket entry #13.) While the UST does not question Mr. Spiegel's honesty, she argues that a chapter 11 trustee is needed to independently evaluate the proposed settlement.

At the outset, the Debtor argues that this Court does not have jurisdiction to hear the UST's motion because the District Court withdrew the reference of this case. This argument is contradicted by the terms of the District Court order. A district court may "withdraw, in whole or in part, any case or proceeding referred" to the bankruptcy court. 28 U.S.C. § 157(d). Here, the District Court withdrew only the reference of the Adversary Proceedings:

> [I]t is SO ORDERED that the adversary proceedings bearing number
> 198-1499-260 and 198-1514-260, originally referenced to this Court
> on July 26, 1999, are now accepted by this Court and these
> proceedings . . . will now be transferred back to this Court's docket
> for all purposes through their resolution . . . .

(Order dated January 13, 2005 at 3, No. 1:05-cv-00208-ENV-JMA, docket entry #1.) The reference of the bankruptcy case was not withdrawn; accordingly, this Court has jurisdiction to hear any motions made in the bankruptcy case, including the UST's motion to appoint a chapter 11 trustee.

The Debtor argues that Mr. Spiegel was excluded from the mediation sessions with the Insurance Companies, and that he has the sole authority to accept a settlement on behalf of the Debtor. Because Mr. Spiegel did not accept the settlement offer on the Debtor's behalf, the Debtor argues that appointment of a trustee is premature, as there is no settlement for a chapter 11 trustee to evaluate. The Debtor further argues that the disclosure of the proposed settlement

violates Rule 408 of the Federal Rules of Evidence, and cannot be considered in connection with the UST's motion.

These arguments are meritless. Whether or not the Debtor accepted the settlement, at a minimum, there is a settlement offer by the Insurance Companies that a chapter 11 trustee could consider. Rule 408 of the Federal Rules of Evidence does not prevent this Court from considering that fact, or the proposed settlement's terms. Rule 408 only prohibits disclosure of "conduct or statements made in compromise negotiations regarding the claim" for the purposes of establishing "liability for, invalidity of, or amount of a claim that was disputed as to validity or amount, or to impeach through a prior inconsistent statement or contradiction." Fed. R. Evid. 408(a). The settlement offer was not disclosed to establish the validity or amount of the Debtor's claims against the Insurance Companies, or for any other purpose that would be prohibited by Rule 408; rather, it was disclosed to set forth the factual background for the UST's motion.

The UST argues that appointment of a chapter 11 trustee is warranted under § 1104(a)(2) because Mr. Spiegel's interests are not aligned with the estate's interests. In support of this argument, the UST introduced into evidence Mr. Spiegel's memorandum of law in support of his motion to intervene in the Adversary Proceedings, where he stated that his interests "are divergent" from the Debtor's. Mr. Spiegel asserted that he should be permitted to intervene because his interests conflict with the estate's interests, because while the Debtor seeks to recover an award to pay creditors, Mr. Spiegel seeks to "recover [his] individual money, time and labor lost." (UST Ex. 1, Spiegel Reply Mem. of Law at 5, No. 1:05-cv-00208, docket entry #13.) Evidently persuaded by Mr. Spiegel's argument, the District Court granted Mr. Spiegel's motion to intervene.

As Mr. Spiegel's statements confirm, his interests materially conflict with the estate's interests. On one hand, Mr. Spiegel is charged with the duty of pursuing or settling the claims against the Insurance Companies in the best interests of the estate and its creditors; on the other hand, he stands to recover only if the proceeds of the Adversary Proceedings exceed the amount needed to fully satisfy all debts of the Debtor. It is well established that courts may appoint a chapter 11 trustee where a debtor-in-possession's management has a conflict of interest that interferes with its ability to fulfill its fiduciary duties to the estate. See Euro-Am. Lodging Corp., 365 B.R. at 428 (citing cases); Bowman, 181 B.R. at 845 ("The presence of a conflict on the facts of this case compels the court to remove a debtor-in-possession from administration of the case.").

For example, in Bowman, a chapter 7 trustee sought to settle a lawsuit, the sole asset of the estate, for an amount sufficient to pay all creditors in full, with a surplus to the debtor. Bowman, 181 B.R. at 840. The debtor objected to the settlement, arguing that it was inadequate and that the action should proceed to trial, and also moved to convert her case to one under chapter 11 of the Bankruptcy Code. Id. at 841. After granting the debtor's motion to convert, the court concluded that the debtor could not remain in possession based upon the "[d]ebtor's own statement that she 'intends to proceed with litigation, through trial,' indicat[ing] her unwillingness to examine other interests above hers," and the "inherent conflict of interest between her duty as a fiduciary to the estate and her desire to maximize the amount of money she may recover for herself." Id. at 845. Allowing the creditors to bear the risk of litigation, for a potentially larger recovery for the debtor's benefit, "would distort the bankruptcy process to

permit the [d]ebtor to shift the risk of loss to the creditors while retaining all the potential benefit

for herself, particularly over the objections of creditors." Id. at 844.

The court explained:

> [W]hen the [d]ebtor must weigh whether to accept a prompt
> settlement that would substantially pay her creditors or to wait and
> gamble on a potential to receive a greater recovery, her creditors'
> interests have a higher priority than the [d]ebtor's own; and they must
> take precedence.
>
>        \*               \*             \*
>
> [T]here is little doubt that the [d]ebtor's and creditors' interests are
> in direct conflict. Unlike the creditors who could lose payment of
> their claims entirely, the [d]ebtor is in the enviable position of having
> little risk in pursuing the litigation. If she prevails in the litigation,
> there is a potential to recover a larger sum of money. . . . The time
> factor of when the creditors will actually receive the money also adds
> an additional layer of risk for creditors.

Id. at 845.

Likewise, in this case, Mr. Spiegel's admission that his interests "are divergent" from the

estate's interests, together with his insistence that the Adversary Proceedings be litigated to

conclusion (Tr. 11/9/09 at 21, 90-91), establishes the presence of a direct conflict of interest

preventing him from fulfilling his fiduciary obligation to place the interests of creditors ahead of

his own.  See Bowman, 181 B.R. at 844 ("[T]he 'higher duty of the debtor as trustee/fiduciary

must take precedence over the more self-interested concerns of the debtor . . . .'" (quoting In re

Herberman, 122 B.R. 273, 281-82 (Bankr. W.D. Tex. 1990))).

Mr. Spiegel argues that, because he has waived his subordinated claim against the estate,

any conflict is now resolved because he has no economic interest in the outcome of the

Adversary Proceedings.  (Debtor's Mem. of Law in Opp'n at 7, docket entry #216.)  This

argument is also meritless. Mr. Spiegel's position in the priority scheme is the same, whether or not he waives his subordinated claim. Mr. Spiegel is the sole shareholder of the Debtor. In the absence of a waiver, he holds a subordinated claim upon which he would receive a distribution only if the proceeds of the Adversary Proceeding exceed the amount necessary to pay all other creditors in full. If he waives his subordinated claim, as holder of all of the equity in the Debtor, Mr. Spiegel maintains the same position in the hierarchy of priorities that he had as holder of a subordinated claim, because he will receive any surplus from the proceeds after all creditors are paid in full. This waiver does nothing to eliminate the conflict between Mr. Spiegel's interests and the estate's interests.

Mr. Spiegel has offered to advance the costs of the litigation that would be incurred in pursuing the Adversary Proceedings, to the extent of a $25,000 retainer to be paid to proposed counsel, and out-of-pocket costs such as expert witness fees. (Tr. 8/12/09 at 42.) This offer provides no basis to deny the UST's motion. There is no contradiction between the fact that Mr. Spiegel's interests conflict with the estate's interests and his offer to advance the litigation costs. Mr. Spiegel is willing to risk $25,000 plus out-of-pocket litigation costs in the hope that the Adversary Proceedings will result in a recovery that would enable him to receive a distribution in this case. However, by doing this, he is gambling with the recovery that Fleet and the administrative creditors would receive under the proposed settlement. Aside from the litigation costs, Mr. Spiegel has nothing to lose by litigating the Adversary Proceedings, while Fleet and the administrative creditors stand to lose the $2,250,000 they would receive through the proposed settlement.

Also weighing in favor of the appointment of a chapter 11 trustee is the lack of trust in Mr. Spiegel by the parties with the greatest economic stake in this case, i.e., Fleet and the administrative creditors, and their loss of confidence in Mr. Spiegel's ability to administer the estate's remaining asset – the claims against the Insurance Companies – in the best interests of the estate.  Fleet and the administrative creditors all support the settlement and the UST's motion.  While this is only one of the factors present in this case, acrimony between the creditors and the debtor's management, standing alone, has been found to be a basis to appoint a chapter 11 trustee under § 1104(a)(2).  See Marvel Entm't Group, Inc., 140 F.3d 463, 474 (3d Cir. 1998) ("The level of acrimony found to exist in this case certainly makes the appointment of a trustee in the best interests of the parties and the estate.").

Mr. Spiegel argues that, because he has the sole authority to accept a settlement on the Debtor's behalf, the appointment of a chapter 11 trustee would amount to an "improper veto of [his] well-grounded decision to reject a settlement offer" (Declaration on Behalf of Intervenor Michael Spiegel in Opp'n to US Trustee's Motion to Appoint Trustee ¶ 14, docket entry #218), and a "rubber stamp" approval of the settlement (Tr. 11/9/09 at 92).  Such a result, the Debtor argues, "usurps the legislative intent of the Bankruptcy [C]ode and the purpose of Fed. R. Bankr. 9019, which places the sole authority to settle the Adversary Proceeding[s] in the hands of the debtor-in-possession."  (Debtor Mem. of Law in Opp'n at 8, docket entry #216.)

In support of this argument, the Debtor relies on In re Smart World Techs., LLC, 423 F.3d 166 (2d Cir. 2005).  In Smart World, a debtor-in-possession objected to its creditors' motion to settle an adversary proceeding brought by the debtor-in-possession.  Smart World, 423 F.3d at 172.  The Second Circuit held that the creditors lacked standing to seek approval of a settlement

pursuant to Rule 9019. Id. at 176. However, the court noted that creditors are not without a remedy if they believe that the debtor-in-possession is improperly refusing to consider a settlement that is in the estate's best interests: "[f]or example, the [Bankruptcy] Code provides that aggrieved creditors and other parties dissatisfied with a debtor-in-possession's conduct may seek appointment of a trustee or examiner under the [Bankruptcy] Code, who could then presumably bring a Rule 9019 motion." Id. at 175-176.

This is not a motion, like the motion before the court in Smart World, whereby creditors are seeking approval of a settlement over the Debtor's objections. Rather, the UST has moved for the appointment of a chapter 11 trustee. This motion has been made because the UST, Fleet, and the administrative creditors challenge Mr. Spiegel's ability to impartially evaluate the settlement offer and have no confidence in his ability to fulfill his fiduciary duties at this point in the case, where the management of the estate's litigation against the Insurance Companies is the only remaining task.

The Debtor's assertion that the appointment of a chapter 11 trustee would result in the "rubber stamp" approval of the settlement is incorrect. (Tr. 11/9/09 at 92.) If a trustee is appointed, the trustee will be charged with the duty of evaluating the settlement offer and determining whether it is in the best interests of the estate. As part of the evaluation, the trustee would consider, among other factors, the merits of the case, the likely cost of litigation, and the "paramount interests of creditors," including unsecured creditors, who will receive nothing under the proposed settlement. Motorola, Inc. v. Official Comm. of Unsecured Creditors (In re Iridium Operating LLC), 478 F.3d 452, 462 (2d Cir. 2007) (quoting In re WorldCom, Inc., 347 B.R. 123, 137 (Bankr. S.D.N.Y. 2006)). The Debtor and Mr. Spiegel will have the opportunity to convince

the trustee that the claims should be litigated and that the settlement offer should be rejected.

The appointment of a chapter 11 trustee will not result in the automatic approval of the

settlement.

Mr. Spiegel argues that his knowledge of the Debtor's business affairs is irreplaceable.

However, this knowledge is of limited value, if any, to the estate at this point in time.  This

bankruptcy case has been pending for twelve years.  The Debtor sold its building, merchandise,

and equipment long ago, does not have any bank accounts or employees, and has not operated for

at least five years.  (Tr. 11/9/09 at 37-38.)  While Mr. Spiegel testified that he hoped to

reorganize the Debtor and continue its business operations with the recovery that he hopes to

receive in the Adversary Proceedings (Tr. 11/9/09 at 35-36), the Debtor provided no evidence to

support a conclusion that a successful reorganization is feasible.  The Debtor's proposed plan in

this case is one of liquidation, and the stipulation between Fleet and the Debtor resolving Fleet's

objections to the Debtor's plan and disclosure statement contemplated that the parties would file

a joint plan of liquidation.  No plan has been proposed by any party that contemplates a

reorganization of the Debtor.  See In re Fiesta Homes of Ga., Inc., 125 B.R. 321, 326 (S.D. Ga.

1990) (finding that the appointment of a trustee, by way of conversion to chapter 7, was

appropriate because the case was "a liquidation case and litigation of the preferences is

essentially all that is left to do, [and] there is no need to balance the propriety of the appointment

of a trustee with the present management's ability to run the company").

The Debtor also argues that the estate would incur additional administrative expenses if a

chapter 11 trustee is appointed.  While it is true that the appointment of a chapter 11 trustee

would increase administrative expenses of this case, the UST's motion should not be denied on

this basis. Mr. Spiegel's interests are not aligned with the estate's interests and the parties with the greatest economic stake in this case have lost confidence in Mr. Spiegel's ability to act in the best interests of the estate. Under these circumstances, the need for a chapter 11 trustee to independently evaluate the settlement offer outweighs the cost of the appointment. See In re Wings Digital Corp., No. 05-12117, 2005 WL 3789334, at *6 (Bankr. S.D.N.Y. May 16, 2005) (the benefits of a chapter 11 trustee outweighed the burden of the cost). Notably, all of the holders of administrative claims, whose recovery would be directly affected by any increased administrative expenses, support the UST's motion.

The UST has not taken the position, nor does this Court hold, that a chapter 11 trustee is always warranted where the debtor-in-possession is managed by its sole shareholder. Rather, the determination whether to appoint a trustee turns on the particular circumstances of each case. In this case, the UST has established, by clear and convincing evidence, that a chapter 11 trustee is in the best interests of the estate because there is no genuine possibility of reorganization, the secured creditor and administrative creditors have no confidence in Mr. Spiegel's ability to carry out the fiduciary obligations of a debtor-in-possession, and because Mr. Spiegel holds a material conflict of interest with the creditors of the estate by reason of his desire to obtain a recovery on account of his equity interest in the Debtor, which prevents him from putting "the paramount interests of the creditors" first in evaluating the proposed settlement, as he would be required to do. Iridium, 478 F.3d at 462 (listing factors to consider when evaluating a settlement).

Other courts have found the appointment of a trustee appropriate in analogous circumstances. See In re Patman Drilling Int'l, Inc., No. 07-34622, 2008 WL 724086, at * 6 (N.D. Tex. Mar. 14, 2008) (appointment of trustee pursuant to § 1104(a)(2) was appropriate

because management held conflicts of interest, the majority of creditors supported the appointment of a trustee, and the creditor body lost confidence in the debtor's management); Euro-Am. Lodging, 365 B.R. at 428-432 (appointment of a chapter 11 trustee was warranted under § 1104(a)(2) for a number of reasons, including management's conflict of interests and the creditors' loss of confidence in management); In re Cajun Elec. Power Coop., Inc., 191 B.R. 659, 663 (M.D. La. 1995) (appointing a chapter 11 trustee pursuant to § 1104(a)(2) because management held conflicts of interest and it was "absolutely necessary . . . that a neutral trustee be appointed to preside in an objective and impartial manner to bring this case to a swift and successful conclusion"); In re Nautilus of N.M., Inc., 83 B.R. 784, 789-790 (D.N.M. 1988) (appointing a chapter 11 trustee under § 1104(a)(2) because management held conflicts of interest and "freely admitted he would protect his own interests first"); In re L.S. Good & Co., 8 B.R. 312, 315 (Bankr. N.D.W. Va. 1980) (appointment of a chapter 11 trustee pursuant to § 1104(a)(2) was warranted because there was no prospect of reorganization and because, under the facts of that case, "current management . . . will be unable to make the impartial investigations and decisions demanded in evaluating and pursuing . . . claims").

18

<u>Conclusion</u>

For the foregoing reasons, the UST's motion is granted to the extent it seeks the

appointment of a chapter 11 trustee pursuant to § 1104(a)(2).  A separate order will issue.



**Dated: Brooklyn, New York**
**March 3, 2010**

**Carla E. Craig**
**United States Bankruptcy Judge**